UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| **Plaintiff,** § | EP-24-cv-00137-FM |
| § | |
| v. § | |
| § | |
| **OPEN MORTGAGE, LLC,** a Texas Limited § | |
| Liability Company § | |
| § | |
| **Defendant.** § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant OPEN MORTGAGE, LLC ("OM") is a limited liability company organized and existing under the laws of Texas and can be served via registered agent Scott Gordon at 14101 W Highway 290 Suite 1300, Austin, Texas 78737.

**JURISDICTION AND VENUE**

3. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow*

1

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

4.      This Court has personal general jurisdiction over Defendant because Defendant is a Texas limited liability company.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff received every single unauthorized call from Defendant is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

6.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

7.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

8.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

9. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

10. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

12. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

13. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition,

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

15.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

16.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

17.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

18.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

19.     Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

20. Defendant OM offers a variety of mortgage loan services to consumers.

21. Plaintiff received at least seven (7) unauthorized calls to his personal cell phone ending in 4604 from Defendant OM from February 14, 2023, to April 1, 2023, soliciting mortgage loan services.

22. Each of the phone calls received by Plaintiff displayed 516-934-1829 or 616-282-1944 on his caller ID.

23. Plaintiff did not answer the first four calls or the sixth call displayed on *Table A*.

24. On March 22, 2023, Plaintiff answered the fifth phone call from phone number 516-934-1829 and was solicited mortgage loan funding from a male telemarketer calling from "National Reverse Mortgage Company". Plaintiff made a DNC request and told the telemarketer he was uninterested.

25. Plaintiff continued to receive phone calls after a DNC request was made as outlined in *Table A* below.

26. 516-934-1829, the phone number that called Plaintiff in paragraph 24, is the same number that was displayed on Plaintiff's caller ID on phone calls after a DNC request was made as outlined in *Table A* below.

27. On April 1, 2023, Plaintiff received a call from phone number 616-282-1944 from "Thomas" again calling from "National Reverse Mortgage Company" and was then live transferred to "Ray Gedstad" calling on behalf on Defendant OM. Through information and belief, the live transfer was an internal transfer from inside Defendant OM's company.

28. Plaintiff was aggravated at having his DNC request ignored and played along on the phone call in order to determine who was ignoring his DNC request.

29. Following the above call, Plaintiff received an email from kimberely-gedstad@openmortgage.com that included the reverse mortgage proposal.

30. The email Plaintiff received from "Ray Gedstad" confirmed the company responsible for the unsolicited calls made to Plaintiff which was Defendant OM

31. Each and every call at issue in this Complaint is a solicitation call marketing mortgage funding.

32. Table A shows the calls sent to Plaintiff by Defendant OM.

TABLE A:

| Number | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 02/14/2023 | 1:59 PM | 516-934-1829 | Declined Call |
| 2. | 03/02/2023 | 1:08 PM | 516-934-1829 | Declined Call |
| 3. | 03/10/2023 | 2:32 PM | 516-934-1829 | Declined Call |
| 4. | 03/20/2023 | 2:53 PM | 516-934-1829 | Declined Call |
| 5. | 03/22/2023 | 12:58 PM | 516-934-1829 | Male telemarketer calling from national reverse mortgage company told him I wasn't interested. |
| 6. | 03/29/2023 | 10:34 PM | 616-282-1944 | Declined Call |
| 7. | 04/01/2023 | 12:42 PM | 616-282-1944 | Male telemarketer Thomas calling from national reverse mortgage company. Transferred to Ray Gedstad with Open Mortgage. Sent email with proposal. |

33. Plaintiff did not have a preexisting relationship with Defendant, had never been a customer of Defendant nor had ever applied for mortgage funding or any other accounts with Defendant.

34. Defendant placed multiple unauthorized phone calls to Plaintiff within a twelve-month

period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

35. On April 1, 2024, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and did not find any registration for Defendant.

36. Plaintiff is a Texas resident and was located in Texas at all times during the calls at issue in this case. Defendant called Plaintiff's Texas area code telephone number (915). Defendant does not qualify for an exemption from the Telephone Solicitation Registration required.

37. Each of the phone calls alleged herein was made without a valid Texas telephone solicitation registration.

38. No emergency necessitated any of the alleged calls.

39. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## TEXAS BUSINESS AND COMMERCE CODE 302.101

40. Defendant OM initiated the phone calls alleged herein and is a "seller" under the Texas Business and Commerce Code ("TBCC") because it makes telephone solicitation on its own behalf and called Plaintiff in this case.

41. Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation."

42. The actions of Defendant OM violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

43. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

44. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

45. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

46. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101

47. Plaintiff was located in Texas at all times during the phone calls at issue in this case.

48. The phone calls in this matter were made to Plaintiff's El Paso, Texas area code (915) telephone number.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

49. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

50. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

51. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

52. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to:

reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

53. The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 17 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### COUNT ONE:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

54. Plaintiff realleges and incorporates the preceding paragraphs 1-53 as if fully set forth herein.

55. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

56. Defendant and/or their agents, called Plaintiff's private residential telephone which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the alleged calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

57. Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. §

227(c)(3)(F) by Defendant's calls described above, in the amount of $500 per call.

58. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

59. Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:
### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

60. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-53.

61. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

62. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

63. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA

and Texas state law;

C.   An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants for seven (7) calls;

E.   An award of $5,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 302.101 for seven (7) calls;

F.   An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.   An award to Mr. Callier of interest, and costs, as allowed by law and equity;

H.   Such further relief as the Court deems necessary, just, and proper;

April 24, 2024,

Respectfully submitted,

/s/ Brandon Callier

Brandon Callier
Plaintiff, Pro Se
1490A George Dieter Drive #174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com